## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL HENRY SMITH, | : | |
| Plaintiff, | : | |
| vs. | : | CA 16-0086-CG-C |
| ALPHABET INC., et al., | : | |
| Defendants. | | |

### REPORT AND RECOMMENDATION

The *pro se* plaintiff originally filed a 35-page complaint in this Court on February 26, 2016, against multiple defendants, both identified and unidentified (*see* Doc. 1), and given the contents of the complaint the undersigned set the matter down for a hearing on March 21, 2016 (Doc. 3). During the hearing, the plaintiff readily admitted that there were numerous deficiencies in his complaint (Doc. 6, at 1) and, therefore, the undersigned instructed plaintiff to file an amended complaint, solely against those defendants that he can identify and who can be readily served, specifically identifying all relevant facts in support of his claims and identifying the claims asserted against each defendant and his right to exercise each claim (and his right to recovery as to each claim) based on the relevant facts (*id.*). *Compare Gregory v. McKennon,* 430 Fed.Appx. 306, 308 (5th Cir. Jun. 22, 2011) (per curiam) (recognizing that a district court generally must afford a *pro* se plaintiff an opportunity to amend his complaint before dismissing for failure to state a claim) *with, e.g., Vaughn v. Postal Employees,* 2014 WL 3540575, *3 (S.D. Ala. Jul. 17, 2014) ("Plaintiff was given an opportunity to correct these deficiencies and was specifically instructed to provide additional facts in his amended complaint regarding the basis for his claims and for the Court's jurisdiction."). In short, plaintiff was instructed to comply with Rule 8(a)

of the Federal Rules of Civil Procedure (*id.* at 1-2) and was informed that his amended pleading would be the operative pleading in this case (*id.* at 2). Plaintiff filed his amended complaint on April 22, 2016 (Doc. 7) and, on May 2, 2016, the Court granted his motion to proceed without prepayment of costs and fees (Doc. 8). However, service was withheld pending this Court's screening of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B). (*Id. at* 4.) The undersigned has screened Smith's amended complaint and now enters this report and recommendation, in accordance with 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72(a)(2)(R) & (S), that this action be dismissed, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and, in part, as frivolous in accordance with 28 U.S.C. § 1915(e)(2)(B)(i).

## BACKGROUND

On February 26, 2016, Michael Henry Smith filed a 35-page complaint against approximately 40 defendants for theft and dissemination of his intellectual property, that is, his short story related to the Waco, Texas biker massacre, and also, apparently, for "**CYBER BULLYING, CYBER STALKING, CYBER HARASSMENT, LIABLE** (sic)**, SLANDER AND DEFAMATION OF CHARACTER, THE USE OF HATE LANGUAGE IN THE PURSUIT OF THESE ACTIONS and/or FOR PROVIDING A SAFE HAVEN [FOR] THE DEFENDANTS CONDUCTING [] THESE ACTIVITIES and/or FOR FAILING TO PROTECT [HIS] WORKS FROM THESE ACTIVITIES[.]**" (Doc. 1, at 1-2.) The undersigned set this cause down for a pretrial conference on March 21, 2016, so that the Court could make certain inquiries about the complaint. (*See* Doc. 3.) Mr. Smith appeared before the undersigned on March 21, 2016, and readily admitted that his complaint was deficient in several respects. (*See* Doc. 6, at 1.) Accordingly, the undersigned extended to plaintiff the opportunity to file an amended complaint not later

than April 22, 2016 (*id.*), which he was advised would be the operative pleading in his case (*id.* at 2), "against those defendants he can identify and who can be readily served[.]" (*Id.* at 1.)

> As specifically discussed with plaintiff, he need identify all relevant facts in support of his claims in separately-numbered paragraphs and also specifically identify the claims raised with respect to each defendant and his right to exercise each claim (and his right to recovery as to each claim) based on the relevant facts. In short, Mr. Smith must comply with Rule 8(a), which reads, as follows:
>
>> A pleading that states a claim for relief must contain:
>>
>> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>>
>> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>>
>> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.
>
> Fed.R.Civ.P. 8(a)(1)-(3).

(Doc. 6, at 1-2.)

Plaintiff filed his amended complaint on April 22, 2016 (Doc. 7), and though the undersigned specifically instructed Mr. Smith to list therein as defendants only those individuals/entities he could identify *and* who can readily be served (*see* Doc. 6, at 1), he included in his amended complaint no less than fourteen (14) defendants shielded by aliases (*see* Doc. 7, at 1) who this Court has no hope of serving with the complaint. Presumably, plaintiff included these "individuals" because they are the defendants— putatively protected by the named defendants—who "openly engaged in Cyber Bullying, Cyber Stalking, Harassment, Defamation of Character, Slander and Liable (sic)[,]" (*id.* at 8), which are apparently claims Smith seeks to pursue herein (*see id.* at 1-2 ("**FIRST**

**AMENDED COMPLAINT IN THE LAWSUIT FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,[1] THEFT AND DISSEMINATION OF MY INTELLECTUAL PROPERTY, FOR CYBER BULLYING, CYBER STALKING, CYBER HARASSMENT, LIABLE (sic), SLANDER AND DEFAMATION OF CHARACTER, THE USE OF HATE LANGUAGE IN THE PURSUIT OF THESE ACTIONS and/or FOR PROVIDING A SAFE HAVEN [FOR] THE DEFENDANTS CONDUCTING OF THESE ACTIVITIES[.]**")). As for the defendants identified by plaintiff who can be served, approximately twenty-five in number (*compare id.* at 1 *with id.* at 14-41), it appears that Smith is claiming that these defendants are guilty of the theft and/or illegal dissemination of his intellectual property by providing the "alias" defendants with a safe haven to carry out their nefarious activities "and/or that they have practiced a willful ignorance that has advanced the theft and dissemination of [his] intellectual property and/or that their negligence has given rise to that theft." (*Id.* at 2.)

Smith's statement of facts in support of his claims, though not separately numbered, as requested (*compare id.* at 8-11 *with* Doc. 6, at 1), consist of the following:

> On the 4th of July, 2015, I listed the first volume of my short story series "The Waco, Texas, Biker Massacre" on the Kindle Direct Publishing service provided by Amazon; and paperback version "The Waco Biker Massacre" on the CreateSpace service provided by Amazon. Within weeks of publishing these titles, persons listed as Defendants and protected by aliases, and others not named here, started offering my work for free through the named defendants. This was part of a campaign of Intentional Infliction of Emotional Distress by some of the defendants. Over the next seven months I tried in vain to have the named defendants stop the harassment and bullying and stalking and dissemination of my works.

---

[1] One page of the amended complaint is dedicated to the tort of outrage or the intentional infliction of emotional distress and Alabama's recognition of this legal theory of recovery. (*See* Doc. 7, at 7.)

The defendants that are named but their identities are protected by the other defendants have openly engaged in Cyber Bullying, Cyber Stalking, Harassment, Defamation of Character, Slander and Liable (sic). They have used Hate Speech amongst other methods to harm me. See. Exhibit 'B-1' and 'B-2'.

These anonymous defendants investigated me. They cited personal details of my identity and my life in online posts. These defendants were indefatigable in their pursuits. Their conduct over a seven month, or longer[,] period[] meets the criteria of excessive. They intentionally inflicted emotional harms onto me.

In that period the anonymous defendants tried to gain entry into my Facebook account[,] and other accounts. They cloned my name and created false postings claiming to be me.

Every time I posted anything remotely relating to the Massacre or my short story, they pounced upon me.

The names of these anonymous defendants are a red flag as to their true nature: "Peter Will Harden," "Long Dong," "Long John,["] and "Whistle Dick" are not the nom de plumes of normal people. Yet, when reported to Facebook, Facebook refused to take action against these criminals. The same for Google and Box.

Numerous legitimate hosting services, file sharing services, and social media services responded immediately to my complaints. The time to take down the offending material was never more than a few hours. Some of the legitimate sites are located in Europe where even the time differential did not create much delay in their immediately snatching down these posts.

The industry standard, as revealed by my personal experience here, is that the legitimate sites do not tolerate these offenses[] once it has been reported to them.

The named defendants have agreed to totally obscure the names and addresses of the people carrying out these crimes. Some have agreed to obscure the names and addresses of those defendants providing first person services to those that are carrying out these crimes. Some have attempted to remain passive in the light of these crimes and/or pretended ignorance.

Make no mistake that the named and identified defendants are directly profiting from the theft of my intellectual property. These are not passive gateways to the Internet.

> During the time of this unrelenting assault I have solely had the burden of caring for my handicapped sister and my 85 year old mother. I have been particularly susceptible to the machinations of the defendants.
>
> As of today, it is my estimation that some 100,000 copies of my work have been distributed without my receiving a single Sioux in compensation.
>
> I have not been able to finish writing and release[] Volume Two of this work as the defendants have decimated my mental, physical and emotional strengths, and eviscerated any income that I would have received from Volume One. The revenues from the sales of this series of short stories was one of my only sources of income to care for my family.
>
> Just to write this civil action was an onerous burden d[ue] to the severe fear, emotional and psychological distress caused by the actions of the defendants. I have nightmares every night that the criminal enterprises connected with these crimes will retaliate against my family.
>
> My physical health has suffered seriously during these months. I have taken to grinding my teeth in my sleep and broken several teeth that I cannot afford to have repaired. I suffer that pain every day.

(Doc. 7, at 8-11.) Immediately following the recitation of these facts, plaintiff makes reference to 47 U.S.C. § 230 and about what it purportedly means (*id.* at 11-13), as well as *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1339 (Fed.Cir. 2014) (*id.* at 13-14), as a prelude to his conclusory argument that "the named defendants are not just the passive conveyances of media on the internet, they are actively seeking and promoting material[,] both legal and illegal[, in order] to drive the profits of their main businesses." (*Id.* at 14.)

The vast majority of plaintiff's 42-page amended complaint is relegated to identifying the defendants who may be served with process and the claim or claims he is asserting against each such defendant (*see id.* at 14-41), as follows: (1) Alphabet, Inc., the parent of Google, has aided and abetted the alias defendants in stealing his short story by providing a safe haven "for these internet criminals" (*id.* at 14-15); (2) Attractsoft GMBH, a hosting service, provides "anonymity to various criminal enterprises whilst they go about their nefarious industries," including the theft and distribution of his intellectual

6

properties, and refuses to reveal the identities of the "criminals" to plaintiff or stop the distribution of his "works[;]" (*id.* at 15-16); (3) Beam.To, a vagabond and "prime" in the theft and distribution of his works, and, therefore, a criminal enterprise, "gives direct aid" to the defendants shielded by their aliases who steal and distribute his works (*id.* at 16-17); (4) Bessemer Venture Partners, is a partner of Box, Inc., and then Smith simply describes what practices Box has engaged in that have purportedly injured him (*id.* at 17-18); (5) Box, Inc.,[2] a hosting service, provides anonymity to "criminal enterprises whilst they go about their nefarious industries[,]" including the theft and distribution of his intellectual properties, and refuses to reveal the identities of the "criminals" to plaintiff or stop the distribution of his "works[;]" (*id.* at 18-19)[3]; (6) Coatue Management, DFJ Growth, General Atlantic, Itochu Technology Ventures, New Enterprise Associates, SAP Ventures, Macnica Networks USA, Inc., Mitsui & Co., Scale Venture Partners, Social & Capital Partnership, Telefonica Digital, Telstra and Telstra Ventures Group, and TPG Capital, thirteen additional entities sued by plaintiff simply for being partners of Box, Inc. who sit on its Board of Directors (*id.* at 19-21, 25-26, 28-35 & 35-40); (7) Ezinecentre, a hosting service "plus", markets stolen works and provides anonymity "to the various criminal enterprises promoting [the distribution of] stolen works[,]" including his intellectual properties (*id.* at 21-22); (8) Facebook, a corporation and online social networking service, has refused plaintiff's many requests to remove the "alias" defendants as subscribers or to reveal their identities and, therefore, is guilty of

---

[2] According to plaintiff, this defendant is also known simply as Box, but also as Open Box and MEDXT. (*Id.* at 18.)

[3] Plaintiff alleges that he has asked Box, Inc. to remove his short story from its services but that this defendant has refused to follow its own published rules and has made "getting any relief a convoluted ordeal." (*Id.* at 19.)

"Disorderly House" and "Misprision of Felony" (*id.* at 22-24); (9) Freehostingeu, a hosting service "plus", markets stolen works and provides anonymity "to the various criminal enterprises promoting [the distribution of] stolen works[,]" including his intellectual properties (*id.* at 24); (10) Google, Inc., "an American multinational technology company specializing in Internet-related services and products[,]" provides "a content driven environment" to post his stolen short story and then directs users to the illegal content and is guilty of "Misprision of Felony and Disorderly House when they look away from obvious criminal conduct[]" (*id.* at 26-27);[4] (11) Automattic Gravatar, another hosting service "plus", who markets stolen works and provides anonymity "to the various criminal enterprises promoting [the distribution of] stolen works[,]" including his intellectual properties (*id.* at 27-28); (12) My Social Hub XP, a vagabond and "prime" in the theft and distribution of his works, and, therefore, a criminal enterprise, "gives direct aid" to the defendants shielded by their aliases who steal and distribute his works (*id.* at 35); and (13) Tucows Inc., another hosting service "plus", who markets stolen works and provides anonymity "to the various criminal enterprises promoting [the distribution of] stolen works[,]" including his intellectual properties (*id.* at 40-41).

## DISCUSSION

A.   **Review under 28 U.S.C. § 1915(e)(2)(B).**

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), a federal court may dismiss as frivolous a claim that "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008), quoting *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827,

---

[4]   Smith claims he has contacted Google and its sub-entities to obtain the identities of the "criminals behind the theft and distribution" of his works and to petition the hosting services to stop distributing his works but has been met at all times with the proverbial cold shoulder. (*Id.* at 27.)

1831-1832, 104 L.Ed.2d 338 (1989); *see also Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (finding an action frivolous when the district court concludes that it has "little or no chance of success," because, based on the face of the complaint, the legal theories are "indisputably meritless," or the factual allegations are "clearly baseless,"—that is, the complaint "lacks an arguable basis either in law or in fact"), *cert. denied*, 510 U.S. 893, 114 S.Ct. 254, 126 L.Ed.2d 206 (1993); *see Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.) (a case is frivolous when it appears the plaintiff has little or no chance of success), *cert. denied*, 534 U.S. 1044, 122 S.Ct. 624, 151 L.Ed.2d 545 (2001); *Clark v. State of Georgia Pardons & Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990) ("A lawsuit is frivolous if the 'plaintiff's realistic chances of ultimate success are slight.'") (quotation omitted)). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *Neitzke, supra,* 490 U.S. at 327, 109 S.Ct. at 1833, the claim seeks to enforce a right which clearly does not exist, *id.*, or there is an affirmative defense which would defeat the claim, such as the statute of limitations, res judicata, collateral estoppel, or absolute immunity, *Clark, supra,* 915 F.2d at 640 n.2. Judges are accorded "not only the authority to dismiss [as frivolous] a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke, supra,* 490 U.S. at 327, 109 S.Ct. at 1833.

In addition to the foregoing, a complaint may be dismissed may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that the language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)). A complaint fails to state a claim when it does not include enough factual matter—taken as true—to "'give the defendant fair notice of what the . . . claim is and the

9

grounds upon which it rests[.]'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To avoid dismissal for failure to state a claim, the allegations must show plausibility. *Id.* at 557, 127 S.Ct. at 1966. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements. *See id.; Mitchell, supra*, 112 F.3d at 1490.

In determining whether a complaint states a claim upon which relief may be granted, the Court takes the plaintiff's allegations as true, *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007), and accords them a liberal construction, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (the allegations of a *pro se* plaintiff are held to "less stringent standards than formal pleadings drafted by lawyers."); *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998) (recognizing that when considering a *pro se* litigant's allegations, the court holds them to a more lenient standard than those of an attorney); however, the court does not have "license . . .

to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Ashcroft v. Iqbal*, 566 U.S. 662 (2009)). Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 135 (1989).

Therefore, leniency notwithstanding, with respect to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, a *pro se* litigant's allegations must meet the *Twombly* standard for plausibility. *See Hall v. Secretary for the Dep't of Corrections*, 304 Fed.Appx. 848, 849 (11th Cir. Dec. 24, 2008) (unpublished)[5] (applying *Twombly* standard to *pro se* prisoner complaint screened pursuant to § 1915(e)(2)(B)(ii)), *cert. denied*, 556 U.S. 1261, 129 S.Ct. 2440, 174 L.Ed.2d 233 (2009).

**B.   Smith's Putative Claims Against the Named Corporate Defendants**. Smith failed to follow the undersigned's specific instructions to set forth in his amended complaint claims against those defendants he could specifically identify and who could be served with process by the Court and, in fact, he appears to assert the lion's share of his claims—the claims of intentional infliction of emotional distress, theft and dissemination of his intellectual property, cyber bullying, cyber stalking, cyber harassment, libel, slander, defamation of character, and the use of hate language in the

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

pursuit of these actions—against these "defendants," that is, the defendants shielded by aliases. (*Compare* Doc. 7, at 1-2 *with id.* at 8-11 & 14-41.) Therefore, besides noting (the obvious) that plaintiff nowhere sets out the elements of these putative causes of action, or how the relevant facts establish how each element is met, the undersigned simply notes that this Court should not delve with any depth into these causes of action—even assuming they are all proper civil causes of action—because they are brought solely against individuals who cannot be readily identified and served with process. *Cf. Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("[F]ictitious-party pleading is not permitted in federal court.").

The clearly-identified and clearly identifiable corporate defendants can be separated into the following five groups: (1) the largest group, some fourteen in number,[6] sued solely on the basis that they are partners of Box, Inc. and are on that entity's Board of Directors; (2) hosting services—Attractsoft GMBH and Box, Inc.—who plaintiff alleges provided anonymity to criminal enterprises as they went about their nefarious industries, including the theft and distribution of his intellectual property (that is, his short story), and refused to reveal the identities of the "criminals" or stop the distribution of his works/intellectual property; (3) vagabonds—Beam.To and My Social Hub XP—who were/are intimately involved in the theft and distribution of his works—and, therefore, are themselves criminal enterprises—by giving direct aid to the defendants shielded by aliases who actually steal and distribute his works; (4) hosting services "plus"—Ezinecentre, Freehostingeu, Automattic Gravatar, and Tucows, Inc.—who market stolen

---

[6] These are defendants Bessemer Venture Partners, Coatue Management, DFJ Growth, General Atlantic, Itochu Technology Ventures, New Enterprises Associates, SAP Ventures, Macnica Networks USA, Inc., Mitsui & Co., Scale Venture Partners, Social & Capital Partnership, Telefonica Digital, Telstra and Telstra Ventures Group, and TPG Capital.

works and provide anonymity to the criminal enterprises promoting/distributing stolen works, including his intellectual property; and (5) Alphabet, Inc., the parent of Google, who has aided and abetted the "alias" defendants in stealing his short story by providing them a safe haven and Facebook and Google, both of whom are guilty of "Disorderly House" and "Misprision of Felony" by virtue of turning a blind eye to obvious criminal conduct and/or refusing to remove the "alias" defendants as subscribers and failing to reveal their identities to the plaintiff.

As for the fourteen partners of Box, Inc., who allegedly sit on its Board of Directors, the plaintiff has simply set forth no theory for holding them liable for the conduct of Box, Inc. (*See* Doc. 7, at 17-18, 19-21, 25-26, 28-35 & 35-40.) Nowhere, for instance, does plaintiff make the argument that these fourteen defendants are "alter egos" of Box, Inc., much less set forth facts establishing the three elements essential to piercing the corporate veil under Alabama law. *Compare Messick v. Moring,* 514 So.2d 892, 894 & 894-895 (Ala. 1987) (recognizing that three common situations—"1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; [and] 3) operation of the corporation as an instrumentality or alter ego[]"—justify piercing the corporate veil and, more importantly, finding that when "instrumentality or alter ego" is the basis for piercing the corporate veil, the following three elements are essential: (1) complete control and domination of the subservient corporation by the dominant party; (2) misuse of control by the dominant party; and (3) harm to the party proximately caused by that misuse) *with, e.g., Heisz v. Galt Indus., Inc.,* 93 So.3d 918, 930 (Ala. 2012) (relying on the three elements identified in *Messick*—control, misuse and harm). Plaintiff's factual allegations do not so much as reference, much less establish, any of the foregoing essential elements and, therefore, Smith's amended complaint fails to state a claim against

these fourteen defendants upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

As for the remaining defendants, Smith's claims can be distilled into two categories: (1) that certain of these defendants—in particular, Alphabet, Inc., Facebook, Google, Beam.To, and My Social Hub XP—have aided and abetted in the theft of his short story or are guilty of other crimes, such as "Disorderly House" and "Misprision of Felony;" (*see* Doc. 7, at 14-15, 16-17, 22-24, 26-27 & 35);[7] and (2) that these defendants have

---

[7] The undersigned need note that plaintiff's citation to (and discussion of) § 230 of the CDA (*see* Doc. 7, at 11-13) in no manner advances his arguments against the corporate defendants inasmuch as it is clear that the Communications Decency Act ("CDA"), 47 U.S.C. § 223, does not provide Smith with a private right of action. *Doe v. Egea,* 2015 WL 3917112, *2 (S.D. Fla. Jun. 25, 2015).

> The CDA is a criminal statute that prohibits the making of "obscene or harassing" telecommunications. 47 U.S.C. § 223(a). Certainly a criminal statute may supply an implied right of action, but only if Congress so intended. *See Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). As the Eleventh Circuit recently explained in *Rock v. BAE Systems, Inc.,* 556 F. App'x 869 (11th Cir. 2014):
>
>> In this context, the Supreme Court has discussed four factors: (1) whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether an implied private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. . . . However, while these four factors are relevant, the central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.
>
> *Id.* at 870-71 . . . .
>
> As noted by the court in *Viola v. A & E Television Networks,* 433 F.Supp.2d 613, 618 (W.D. Pa. 2006), "It appears beyond dispute that the CDA criminalizes certain activity and imposes criminal penalties, i.e., fines pursuant to Title 18, which is the criminal code, and imprisonment, for violations thereof." *Id.* (citations omitted). Defendants cite to *Ashland Hospital Corp. v. International Brotherhood of Electrical Workers Local 575,* 807 F.Supp.2d 633 (E.D. Ky. 2011), where the court noted it was "well settled" "the CDA does not authorize a private right of action." *Id.* at 645 (citing cases). Further, the court stated "[w]here plaintiffs have initiated civil suits

(Continued)

allowed the dissemination/distribution of his intellectual property—specifically, his short story on the Waco, Texas biker massacre—by providing the "alias" defendants with a safe haven to carry out their nefarious activities and have failed to heed his requests to stop these activities (*see id.* at 14-17, 18-19, 21-24, 26-28, 35 & 40-41).

As for plaintiff's claim that certain corporate defendants have aided and abetted the "alias" defendants with respect to the theft of his short story/intellectual property,[8]

---

> under this statute, courts have consistently refused to imply a private right of action." *Id.* (alteration added' citing additional cases).
>
> . . .
>
> Plaintiff is not a grammarian, nor does her argument about the statute's use of the disjunctive "or"—allowing either the Commission or an attorney employed by the Commission to assess fines—indicate anything about a Congressional intent to create an implied private right of action to an otherwise singularly criminal statute.

*Id.* at *2.

---

[8] Aiding and abetting in the theft of property is a criminal offense, whether consultation is made to Alabama law, *see, e.g., Rutherford v. State,* 563 So.2d 1, 2 & 3 (Ala.Crim.App. 1989) ("[Pursuant to § 13A-8-2 of the Alabama Code] '[a] person commits the crime of theft of property if he: (1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or (2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property.' Pursuant to § 13A-8-4(e), Code of Alabama (1975), a person commits the crime of theft of property in the second degree if the property is 'taken from or in a building where said property is sold or stored,' and the value of the property exceeds $25.00 Pursuant to § 13A-2-23(2), Code of Alabama (1975), a person is legally accountable for the conduct of another if, with the intent to assist in the commission of a crime, he aids or abets such other person in the commission of the offense. 'For the purposes of indictments and trials, there is no distinction between principals and accessories under Alabama law.' . . . In this Court's opinion, the prosecution clearly proved a prima facie case of theft of property in the second degree. The evidence showed that the two women took merchandise in excess of $25.00 from the Delchamps store, and that the appellant aided and abetted the women by assisting in their escape, and by helping them to dispose of the stolen property immediately prior to their apprehension. While the appellant argues that the record fails to show that he willfully associated himself with the criminal venture, and willfully participated in the theft, the great weight of the evidence indicates [] the contrary."); *Evans v. State,* 508 So.2d 1205, 1207 (Ala.Crim.App. 1987) ("It is hornbook law that one cannot be convicted of aiding and abetting the perpetrator of a crime unless it is first shown that a crime has actually been committed by another. . . . Evans could not have been guilty of aiding and abetting Saulter in a
(Continued)

and that Facebook and Google are guilty of "Disorderly House"[9] and "Misprision of Felony,"[10] Smith has not cited any statute (or case law) that affords him (either explicitly

---

theft unless the State first proved that Saulter actually committed a theft."); *Robinson v. State,* 432 So.2d 518, 519 (Ala.Crim.App. 1983) ("The defendant argues that since no witness 'could testify as to the *number* of items (except two sheets) taken by defendant on that occasion, . . . the jury had insufficient evidence by which to establish the aggregate value of $1,000 as needed for a First Degree Theft conviction. This argument ignores the principle of aiding and abetting as a basis for criminal culpability. . . . The 'key elements of accomplice liability are encouragement or presence "with a view to render aid should it become necessary."' . . . Whenever 'two or more persons join in an unlawful enterprise each is responsible for everything which may consequently and proximately flow from the unlawful purpose, whether committed by the accused or not . . . . All persons concerned in the commission of a felony . . . are equally guilty.' . . .   In this case, the defendant's participation in the theft of some of the items renders her guilty for the theft of all the merchandise."); *Pennington v. State,* 421 So.2d 1361, 1362 & 1363 (Ala.Crim.App. 1982) ("Any person who is present, encourages, aids, abets or assists another in any way, in the commission of a crime is equally as guilty as the one who directly commits the act, and the aider and abettor must be indicted, tried and punished as a principal. . . . A review of the record reveals that there was sufficient evidence to establish a prima facie case of appellant's participation in the theft.") , or federal law, *compare, e.g., United States v. Beverly,* 170 Fed.Appx. 113, 114 (11th Cir. Mar. 13, 2006) (aiding and abetting in the theft of government property is a violation of 18 U.S.C. §§ 641 and 2) *with United States v. Sims,* 398 Fed.Appx. 494, 494 & 495 (11th Cir. Sept. 30, 2010) ("Marcel Sims appeals his convictions for robbery in violation of the Hobbs Act, 18 U.S.C. §§ 2, 1951(a), and carrying a firearm during that robbery, *id.* §§ 2, 924(c). Sims challenges the sufficiency of the evidence to support his convictions and the refusal of the district court to give his proposed jury instructions on robbery and aiding and abetting. . . . Sims argues he could not be convicted of robbery or the related firearm offense because the government failed to prove that he stole property 'from the person or in the presence of another . . . by means of actual or threatened force . . . or of anyone in his company at the time of the taking or obtaining,'" 18 U.S.C. § 1951(b)(1), but we disagree. Aided by the actual force used by Maurice Jenkins, his cohort, Sims was able to steal a package both in the presence of a delivery driver and when the driver was in the company of a private security guard. . . . The omission of Sims's proposed language did not impair his ability to convey to the jury his defense that he aided and abetted Sims solely in a scheme to steal property."), *cert. denied,* 562 U.S. 1206, 131 S.Ct. 1057, 178 L.Ed.2d 874 (2011); *see generally Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 185, 127 S.Ct. 815, 817, 166 L.Ed.2d 683 (2007) ("Immigration law provides for removal from the United States of an alien convicted of 'a *theft offense* . . . for which the term of imprisonment [is] at least one year.' 8 U.S.C. § 1101(a)(43)(G)[]; § 1227(a)(2)(A). The question here is whether the term 'theft offense' in this federal statute includes the crime of '*aiding and abetting*' a theft offense. We hold that it does.").

[9]   "A disorderly house is defined, in general terms, as a house or other place to which people resort, to the disturbance of persons lawfully in the place, or the disturbance of the neighborhood." *Hickey v. State,* 53 Ala. 514, 516, 1875 WL 1195, *2 (Ala. 1875), citing 1 Bish. Cr. L. § 1046.

> There are other definitions, broader, and more descriptive of the places or houses denounced *in the criminal law as disorderly*. That given by Wood on the "Law of

(Continued)

or implicitly) a private right of action to pursue the defendants for such "crimes." Stated somewhat differently, plaintiff has not established his standing to pursue these defendants civilly for singularly criminal offenses. Accordingly, in this respect, plaintiff is seeking to enforce a right that clearly does not exist and, therefore, it is recommended that this "group" of claims be dismissed as frivolous in accordance with 28 U.S.C. § 1915(e)(2)(B)(i).

What is left of plaintiff's complaint is his claim against the remaining eleven identified corporate defendants—that is, all defendants other than the fourteen partners of Box, Inc.—that these defendants have allowed the dissemination/distribution of his intellectual property—specifically, his short story on the Waco, Texas biker massacre—by

---

>Nuisance," taken from the case of *State v. Williams*, 30 N.J. 102, will, perhaps, embrace the character of houses recognized by judicial decisions as falling within the term disorderly: "A disorderly house is any place of public resort, in which unlawful practices are habitually carried on, or which becomes a rendezvous or place of resort for thieves, drunkards, prostitutes, or other idle, vicious and disorderly persons, who gather there to gratify their depraved appetites, or for any purpose; for such persons are regarded as dangerous to the peace and welfare of the community, and their presence at any place, in considerable numbers, is always a just cause of alarm and apprehension." Wood on Nuisances, § 38. The general terms of this definition may need qualification; but we think it can be stated as a clear legal proposition, that if a house is a common resort for the commission of criminal offenses, it is ***indictable*** as a public nuisance.

*Id.* at 516-517 (emphasis supplied); *see also Cohn v. State,* 110 Ala. 56, 57, 20 So. 380, 380 (Ala. 1896) (defendant was indicted, tried and convicted of keeping a disorderly house); *Sparks v. State,* 59 Ala. 82, 1877 WL 1127 (Ala. 1877) (defendant was indicted for keeping a disorderly house); *Wooster v. State,* 55 Ala. 217, 218 & 221, 1876 WL 1141, *1 & 4 (Ala. 1876) (defendant was indicted as a keeper of a house of prostitution, a bawdy-house, a disorderly house).

[10] Misprision of a felony, a rarely charged crime, requires proof of the following four elements: "(1) commission and completion of a felony offense by another; (2) actual knowledge by defendant of the commission of such felony; (3) failure by defendant to notify authorities; and (4) an affirmative act by defendant to conceal the crime." *United States v. Brantley,* 2013 WL 452023, *3 (M.D. Fla. Feb. 6, 2013), *aff'd,* 803 F.3d 1265 (11th Cir. 2015), *cert. denied,* ___ S.Ct. ___, 2016 WL 1134760 (May 2, 2016); *see United States v. Jacobs,* 312 Fed.Appx. 238, 239 (11th Cir. Feb. 17, 2009) (referencing the defendant's indictment for misprision of a felony).

providing the "alias" defendants with a safe haven to carry out their nefarious activities and have failed to heed his requests to stop these activities.[11] To be sure, the Supreme Court has made clear that "[o]ne infringes *contributorily* by intentionally inducing or encouraging direct infringement, and infringes *vicariously* by profiting from direct infringement while declining to exercise a right to stop or limit it[.] Although '[t]he Copyright Act does not expressly render anyone liable for infringement committed by another,' these doctrines of secondary liability emerged from common law principles and are well established in the law[.]" *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S.Ct. 2764, 2776, 162 L.Ed.2d 781 (2005) (citations omitted; emphasis supplied). The problem in this case, however, is that Smith's amended complaint contains no reference to the Copyright Act, or that he registered his short story with the Copyright Office (or was refused such registration), a prerequisite to bringing an action for copyright infringement. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012), *cert. denied*, ___U.S.___, 133 S.Ct. 1810, 185 L.Ed.2d 812 (2013); *see also id.* ("Congress created a substantial incentive for copyright owners to register United States works: [N]*o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.* In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, *the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.* (emphasis supplied)). In the absence of any allegations that Smith registered

---

[11] Plaintiff has stated this claim in slightly different ways against these defendants but, at bottom, this is an appropriate statement of his claim.

his short story with the Copyright Office (or was refused such registration), plaintiff has not established his ability to initiate a civil action for infringement, more specifically, vicarious and/or contributory infringement in accordance with *Metro-Goldwyn-Mayer Studios Inc., supra;* therefore, in this regard, plaintiff has failed to state a claim upon which relief may be granted and this portion of his complaint is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Based on the foregoing, the undersigned recommends that the Court dismiss this action, prior to service, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and, in part (as explained above), as frivolous in accordance with 28 U.S.C. § 1915(e)(2)(B)(i).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify

the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 23rd day of May, 2016.

                         s/WILLIAM E. CASSADY
                         **UNITED STATES MAGISTRATE JUDGE**